MANUEL MADERA, demandante y apelante, *v.* HERMINIO MADERA, INC., TETUÁN TOBACCO LEAF, INC. y HERMINIO MADERA, demandados y apelados.

No. 6407.—*Sometido:* Enero 16, 1935. *Resuelto:* Diciembre 13, 1935.

*Dubón & Ochoteco y B. F. Sánchez Castaño,* abogados del apelante; *R. Rivera Zayas,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Manuel Madera como cesionario de José Madera instituyó este pleito para recobrar el importe en descubierto de un pa-

garé (suscrito por Herminio Madera, Inc., Tetuán Tobacco Leaf, Inc. y Herminio Madera) y para ejecutar una hipoteca otorgada por la Tetuán Tobacco Leaf, Inc., para garantizar el pago del referido pagaré. Este último y la hipoteca estaban fechados el 16 de marzo, 1931. Surgieron como consecuencia de ciertas disposiciones contenidas en un contrato anterior fechado marzo 3, 1931. El principal, los intereses, y la fecha de vencimiento especificados en el pagaré correspondían con el principal, los intereses y fecha de vencimiento de una obligación similar asumida por Herminio Madera, Inc., Tetuán Tobacco Leaf, Inc., Herminio Madera, y otros, como partes en el contrato anterior. Ciertas porciones de este contrato fueron copiadas en la hipoteca como partes esenciales de la misma. El incumplimiento de ciertas obligaciones del contrato de hipoteca servía de base a una cláusula que hacía que todo el contrato se tuviera por vencido (*accelerating clause*) y que figuraba tanto en el cuerpo del pagaré como en el de la escritura de hipoteca. El incumplimiento de obligaciones similares especificadas en el contrato anterior, servía de base a una cláusula similar en el mismo. El demandante alegó que los demandados habían dejado de cumplir un número de estas obligaciones. Los demandados contestaron que les había sido imposible cumplir esas obligaciones debido a que el demandante, como cesionario, y su cedente, acreedor original, habían dejado de entregar a Herminio Madera, uno de los demandados, ciertas acciones, conforme disponía el contrato de marzo 3, así:

"José Madera, Manuel Madera, y Herminio Madera, convienen mutuamente que al otorgar la hipoteca en el registro de la propiedad a favor de José Madera, sobre el edificio conocido con el nombre de Tobacco Palace, sujeta a los términos de este contrato, y al inscribirse la aludida hipoteca sin defecto alguno, en la forma provista por esta cláusula, que José Madera y Manuel Madera entregarán a Herminio Madera, debidamente endosadas en blanco, las acciones que en la actualidad ellos puedan tener de la corporación Alonso Riera & Co., Inc."

La corte de distrito resolvió que el demandante y su cedente habían dejado de endosar y entregar las acciones y declaró sin lugar la demanda.

■■ La cuestión es si este caso cae dentro de la regla general establecida por el artículo 1053 del Código Civil (edición de 1930), o dentro de una excepción reconocida en el párrafo final que lee como sigue:

"En las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro."

Las partes que intervinieron en el contrato de marzo 3, lo fueron José Madera, Herminio Madera, Manuel Madera, Bautista Madera, Herminio Madera & Hno. (una sociedad), Alonso Riera & Co., Inc., Tetuán Tobacco Leaf Incorporated (conocida más tarde como Herminio Madera & Hno. Incorporated) y Herminio Madera, Inc. José Madera era miembro de la firma Herminio Madera & Hno. y accionista de Alonso Riera & Co., Inc. José y Manuel Madera habían instruído ciertas acciones ante las cortes insulares y ante la Corte de Distrito de los Estados Unidos contra Herminio Madera, Herminio Madera & Hno. y Alonso Riera & Co., Inc. Herminio Madera & Hno., Inc. "conocida ahora por Tetuán Tobacco Leaf, Inc." también estaba envuelta en estas controversias. Bautista Madera y Manuel Madera también estaban envueltos "y/o interesados" en varios otros pleitos o procedimientos que se hallaban pendientes ante las mismas cortes contra José Madera. En enero, 1927, Alonso Riera & Co., Inc. adquirió 710 acciones, constituyendo las mismas todas las expedidas hasta aquel entonces por la Combate Tobacco Corporation. En abril, 1928, Bautista Madera, por virtud de un convenio celebrado con José, Herminio y Manuel Madera (quienes para aquella época eran dueños y controlaban todas las acciones de la corporación Alonso Riera & Co., Inc.) adquirieron las 710 acciones. El propósito fijo de todas las

partes que intervinieron en el contrato de marzo 3, 1931, fué poner fin a todas las reclamaciones, diferencias y controversias existentes.

El contrato contenía doce cláusulas.

En la primera de ellas, Herminio Madera y Alonso Riera & Co., Inc., renunciaban todo derecho a las 710 acciones traspasadas a Bautista Madera en abril, 1928, y ratificaron dicho traspaso. Herminio Madera, por sí y en representación de Alonso Riera & Co., Inc., convino en devolver al secretario de la Combate Tobacco Corporation un certificado cancelado por 150 acciones de dicha corporación que había sido unido a un pleito iniciado por Alonso Riera & Co. contra la sucesión de Benigno Díaz y Alonso Riera & Co., Inc. Admitió que ni Benigno Díaz ni su sucesión jamás habían tenido derecho o interés alguno en el referido certificado o en las acciones de la Combate Tobacco Corporation. Se obligó a nombre propio y en la capacidad representativa que ostentaba (es decir, a nombre de Herminio Madera & Hno., Alonso Riera & Co., Inc., conocida más tarde por Herminio Madera & Hno. Inc., y Herminio Madera, Inc.) en obtener el desistimiento de un pleito o procedimiento de *mandamus* iniciado por Aurelio Prado contra la Combate Tobacco Corporation y otros, y conseguir de Aurelio Prado un reconocimiento de que nunca había tenido derecho o interés alguno en las acciones de la Combate Tobacco Corporation. Convino, a nombre propio y en su capacidad representativa, en obtener de Angel Prado un reconocimiento al efecto de que Prado nunca había tenido derecho o interés algunos en tales acciones. Convino igualmente (a nombre propio y como miembro de la sociedad Herminio Madera & Hno. y también en su capacidad representativa antes dicha) en obtener que se desistiera de una acción o procedimiento entablado por Herminio Madera & Hno. contra José Madera, así como el desistimiento de otros pleitos pendientes en que José Madera y/o Bautista Madera, y/o Manuel Madera, y/o Combate Tobacco Corporation, eran demandados y/o estaban envueltos y/o interesados.

En la segunda cláusula José Madera, por y en consideración de la suma de $12,000 que sería pagada según más adelante se hacía constar en el mismo documento, renunciaba todos sus derechos e intereses en la casa de Alonso Riera & Co. Inc. y en la de Herminio Madera & Hno., con la condición de que tal renuncia no sería efectiva hasta que los $12,000 fueran pagados o hasta que el pago de dicha cantidad fuese garantizado mediante las garantías que para él fuesen aceptables.

La tercera cláusula hacía mención del pago anterior de $2,000 en tabaco en rama y disponía el pago de los $10,000 restantes en oro (moneda de los Estados Unidos) el primero de enero de 1936, con intereses al 8 por ciento, pagaderos mensualmente por anticipado el primero de cada mes.

La cláusula cuarta se refería a una hipoteca sobre el edificio conocido como Tobacco Palace, perteneciente a la Tetuán Tobacco Leaf, Inc. Disponía además que el edificio Tobacco Palace "no estaría sujeto a cargas o gravámenes de clase o naturaleza algunas por una suma en exceso de CINCUENTA Y DOS MIL DÓLARES ($52,000.00)." Herminio Madera se comprometía, a nombre propio y en su capacidad representativa, a reducir y cancelar en el registro de la propiedad antes del 30 de agosto de 1931 "cualesquiera derechos o cargas hoy existentes o que afecten el referido edificio Tobacco Palace en exceso de la aludida suma de $52,000.00." Había una disposición sobre un método alternativo, como sustituto de la cancelación en el registro de la propiedad, referente a cierta hipoteca otorgada para garantizar pagarés o bonos ascendentes a unos $30,000, que debía ser reducida a $10,000.

En la cláusula quinta Herminio Madera, por sí y en su capacidad representativa, se obligaba a pagar todas las contribuciones sobre el edificio Tobacco Palace así como los intereses de cualquier hipoteca u otra obligación pendiente que afectare o gravare dicha propiedad, así como asegurar la misma contra incendio o terremoto por una suma que no bajará de $75,000.

En la cláusula séptima Herminio Madera, a nombre propio y en su capacidad representativa, convenía en obtener el otorgamiento de ciertos documentos y en pagar todos los gastos incluyendo los del registro de la propiedad.

En la cláusula novena Herminio Madera y José Madera convenían, al disolverse la firma Herminio Madera & Hno., en que Herminio Madera se haría cargo de todo el pasivo.

Por las cláusulas décima y undécima Herminio Madera, por sí y en su capacidad representativa, se obligaba a cambiar el nombre de la corporación Herminio Madera & Hno., Inc. y en lo sucesivo a no usar las palabras "& Hno.".

Las cláusulas sexta, octava y duodécima, leían así:

"*Sexta:* Todas las partes aquí comparecientes convienen, como condición esencial de esta escritura, que al dejarse de pagar los intereses sobre los $10,000, o cualquier parte de los mismos, y/o al dejarse de cumplir con el pacto estipulado en el párrafo quinto anterior o cualquiera de ellos, y/o al dejar de cumplir, y/o cumplir cualesquiera de las obligaciones contraídas por medio de esta escritura por parte de Herminio Madera, y/o cualquiera de las diversas entidades, y/o corporaciones, en cuya representación Herminio Madera comparece en la presente, el total de los $10,000 o la parte de los mismos que esté pendiente de pago, se considerará vencida y exigible y el Sr. José Madera tendrá derecho a proceder a su cobro."

"  .     .     .     .     .     .     .     .     .

"*Octava:* Queda convenido que al otorgarse e inscribirse sin defecto en el registro de la propiedad de San Juan, P. R. la escritura o hipoteca a que se hace referencia en el párrafo anterior, el Sr. José Madera dará los pasos necesarios para desistir de todos los pleitos y procedimientos que en la actualidad se hallan pendientes ante las cortes insulares o federales de Puerto Rico, en que José Madera sea demandante o peticionario, y se conviene además en que al otorgarse e inscribirse sin defectos en el registro de la propiedad de San Juan, P. R. la escritura de hipoteca a que se alude en el párrafo precedente, el Sr. Manuel Madera dará los pasos necesarios para desistir de todos los pleitos y procedimientos que se hallen en la actualidad pendientes ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico en el caso de Manuel Madera v. Alonso Riera & Co., Inc., Herminio Madera & Hno., Inc., y Herminio Madera, pleito en equidad No. 1578, procedimientos que serán

desestimados; Herminio Madera a nombre propio y en la representación que ostenta, comprometiéndose por sí en allanarse y avenirse a tales desistimientos, sin costas, y sin derecho a indemnización por daños y perjuicios de clase alguna.

"Que en consideración a los pactos y estipulaciones aquí contenidos y sujeto a los términos de este contrato, Herminio Madera, Herminio Madera & Hno., Tetuán Leaf Tobacco, Inc., conocida más tarde por Herminio Madera & Hno., Inc., Alonso Riera & Co., Inc., y Herminio Madera, Inc., definitivamente exoneran, liberan y eximen a José Madera, a Manuel Madera y a Bautista Madera, así como también a la Combate Tobacco Corportion, sus herederos, sucesores o cesionarios, de toda responsabilidad de la clase o índole que fuere, en derecho, en equidad o en cualquier otra forma, por razón de cualquiera deuda, reclamación, pleito, causa de acción, indemnización o de cualquiera otra naturaleza, ya exigible, o que pueda surgir en el futuro en favor de cualquiera de ellos por razón o por virtud de cualquier o de todos los pleitos, litigios y procedimientos instituídos por cualquiera de ellos, contra cualquiera de ellos y en que ellos puedan estar envueltos o ser afectados en forma alguna, otorgando los referidos Herminio Madera, Herminio Madera & Hno., Tetuán Leaf Tobacco, Inc., conocida luego con el nombre de Herminio Madera & Hno., Inc., Alonso Riera & Co., Inc., y Herminio Madera, Inc., aquí y por la presente al referido José Madera, Manuel Madera y Bautista Madera, así como a la Combate Tobacco Corporation, mancomunada y solidariamente, un recibo en pago total y finiquito de tales deudas, reclamaciones, pleitos, causas de acción, indemnizaciones o de cualquiera otra índole, incluyendo cualquier deuda o reclamación. que en la actualidad pueda figurar en descubierto en los libros de contabilidad de los referidos Herminio Madera, Herminio Madera & Hno., Tetuán Leaf Tobacco, Inc., conocida más tarde por Herminio Madera & Hno., Inc., Alonso Riera & Co., Inc., y Herminio Madera Inc.

"José Madera, Manuel Madera, y Herminio Madera, convienen mutuamente que al inscribir la hipoteca en el registro de la propiedad a favor de José Madera, sobre el edificio conocido con el nombre de Tobacco Palace, sujeta a los términos de este contrato, y al inscribirse la aludida hipoteca sin defecto alguno, en la forma provista por esta cláusula, que José Madera y Manuel Madera entregarán a Herminio Madera, debidamente endosadas en blanco, las acciones que en la actualidad ellos puedan tener de la corporación Alonso Riera & Co., Inc."

"  .

"*Duodécima:* Que la parte que faltare al cumplimiento de este contrato estará sujeta a la pena y pagará a la otra parte la suma de $2,000 en concepto de daños y perjuicios líquidos; y entonces quedarán nulos los términos de este contrato."

Si el contrato en el párrafo final de la cláusula octava es un pacto independiente entre los contratantes José y Manuel Madera y Herminio Madera, o es una condición suspensiva o resolutoria de otras obligaciones, asumidas en cualquier otro sitio por el último contratante, mancomunada o mancomunada y solidariamente, con otros de los contratantes, es cuestión que depende de la intención de las partes al tiempo de otorgar el contrato. Si fué la intención de los contratantes que la obligación de pagar el remanente de los $10,000 dependiera de que Manuel o José Madera endosaran en blanco y entregaran ciertos certificados de acciones a Herminio Madera, o que tales endosos y entrega precederían a la obligación de pagar las contribuciones e intereses y el seguro contra incendio y terremoto, en el contrato mismo habrá que hallar alguna prueba satisfactoria de tal intención. No la hallamos.

La obligación de pagar los intereses y las contribuciones y de asegurar la propiedad contra incendio y terremoto no está sujeta a condición alguna. De conformidad con los términos expresos de la segunda cláusula, la renuncia por parte de José Madera de todos sus derechos e intereses en las firmas de Alonso Riera & Co., Inc., y de Herminio Madera & Hno., sería efectiva al pagarse los $12,000 o al prestarse las garantías que para él fueran aceptables, mas no al endosarse y entregársele los certificados de acciones. Los $12,000 debían ser pagados en la forma en que luego se proveía en el contrato mismo. El pacto posterior relativo a la entrega de acciones no hacía referencia alguna a la suma de $12,000 o a la forma en que la misma debía ser pagada. La tercera cláusula del contrato lee así:

"*Tercera:* Que los $12,000 a que se hace referencia en la cláusula anterior serán pagados a José Madera en la siguiente forma: $2,000.00 (DOS MIL DÓLARES) en tabaco en rama americano, que le

ha sido entregado con anterioridad al otorgamiento de este contrato, y DIEZ MIL DÓLARES ($10,000.00) que le serán pagados en oro (moneda de los Estados Unidos) el primero de enero de 1936, suma que devengará intereses a razón del ocho por ciento anual, pagaderos mensualmente y por anticipado el día 1 de cada mes, en el Royal Bank of Canada, sucursal de San Juan, o en cualquier otro sitio en Puerto Rico que José Madera pueda designar.''

En verdad, esto no da indicio alguno de que fuera el propósito hacer que el pago de los $10,000 en enero 1, 1936, dependiera de que se endosara y entregara un certificado de acciones. La obligación está tan exenta de condiciones como lo está la de pagar las contribuciones e intereses y la de tener el edificio Tobacco Palace asegurado, según se consigna en la cláusula quinta. El hacer que una u otra de estas obligaciones dependiera indefectiblemente del cumplimiento del pacto contenido en el párrafo final de la cláusula octava, hubiera sido cuestión por demás simple. El dejarse de haber hecho esto, es significativo. Se hace aun más significativo en vista del propósito claro enunciado en el preámbulo, a saber:

'' . . . resolver entre todas las partes aquí comparecientes todas y cualesquiera reclamaciones y/o diferencias existentes entre ellos y con el fin de resolver de una vez y para siempre tales reclamaciones y/o diferencias, y cualesquiera pleitos, acciones o procedimientos en derecho, en equidad o de alguna otra índole que en la actualidad se hallen pendientes ante las cortes insulares de Puerto Rico y/o de la Corte de Distrito de los Estados Unidos para Puerto Rico, sobre, en relación, o concerniente a los derechos y/o intereses, y/o bienes de todos o cualquiera de los aquí comparecientes . . . ''

El objeto de ''resolver de una vez y para siempre tales reclamaciones'' sería destruído en gran parte al imputarse la intención de hacer que la obligación de pagar las contribuciones e intereses o la obligación de pagar los $10,000 dependieran del cumplimiento o incumplimiento del pacto relativo al endoso y entrega de las acciones. La disposición contenida en la cláusula duodécima relativa al pago de $2,000 por la parte que faltare al cumplimiento como daños y per-

juicios líquidos, está en armonía con el fin claro de todas las partes envueltas, conforme el mismo fué expuesto en el preámbulo, y milita contra la noción de interdependencia existente entre el pacto relativo al endoso y la entrega de las acciones y la obligación de pagar en consonancia con los términos de la cláusula que hacía la obligación exigible (*accelerating clause*).

■ Hubo algún conflicto de prueba respecto al valor de las acciones. La del demandante tendió a demostrar que las mismas no tenían valor alguno. El demandado Herminio Madera declaró que las necesitaba a fin de poder disolver la corporación Alonso Riera & Co., Inc. Sin embargo, él personalmente poseía o controlaba el 80 por ciento de las acciones de dicha corporación. Y no se ha ofrecido explicación alguna de por qué necesitaba él más de esta cantidad para poder efectuar la disolución. Sea ello como fuere, la cuestión relativa al valor de las acciones no fué un punto primordial. No importa cuál pueda haber sido el valor de las acciones, el certificado en poder de José Madera carecía prácticamente de valor después de haber renunciado todos sus derechos e intereses en la firma de Alonso Riera & Co., Inc., lo que se hacía efectivo al aceptar el pagaré y la hipoteca otorgada para garantizar el pago del mismo.

■ El testimonio en apoyo de la alegación de que a los demandados no les había sido posible pagar los intereses y las contribuciones ni cumplir ciertas otras obligaciones debido a que el demandante y su cedente habían dejado de endosar y entregar las acciones, no es muy convincente. El juez de distrito no llegó a conclusión alguna sobre esta cuestión. La verdadera cuestión en controversia fué si los demandados quedaron exonerados de sus obligaciones por haberse dejado de endosar y entregar las acciones. Técnicamente, la cuestión relativa a la relación causal entre el haberse dejado de endosar y entregar las acciones y la imposibilidad de los demandados de cumplir sus obligaciones no estaba envuelta. Decimos "técnicamente" porque desde el principio hasta el

176

fin éste es un caso técnico. Un motivo de mayor peso respecto a la supuesta razón que tenían los demandados para no poder cumplir sus obligaciones, pudo quizá haber apelado a la conciencia y a las simpatías de la corte inferior. Si estuviésemos convencidos de que en la corte de distrito se había hecho justicia substancial, no estaríamos dispuestos a acudir en ayuda del apelante para lograr la revocación de la sentencia por fundamentos técnicos.

La causa (*consideration*) principal, de no ser la única, para el convenio de pagar el remanente de $10,000, así como los intereses y las contribuciones y tener el edificio Tobacco Palace asegurado, fué la renuncia por parte de José Madera de todos sus derechos e intereses en la firma de Alonso Riera & Co., Inc., y en la de Herminio Madera & Hno. José Madera mediante tal renuncia se desprendió del título que tuviera de cualesquiera acciones en la corporación Alonso Riera & Co., Inc., y el endoso y entrega de cualquier certificado o certificados como evidencia adicional de tal desprendimiento hubiera sido una mera formalidad. El convenio de parte de José Madera relativo al endoso y entrega de las acciones fué, a lo sumo, una parte insignificante de la causa, y el dejar de endosar y entregar las acciones, fué tan sólo una falta parcial y material de la causa. Cualquier incumplimiento del contrato por parte de José y Manuel Madera o de cualquiera de ellos, pudo ser compensado en daños y perjuicios, aun sin existir la disposición de la cláusula duodécima relativa a daños líquidos por la suma de $2,000.

No hemos penetrado intensamente en este aspecto del caso. Como punto de partida para una investigación ulterior, véanse: 13 C. J. 567, et seq., secciones 538, 539 y 540, los párrafos "Partial Consideration" y "Entire Consideration"; "Restatement of the Law of Contracts", adoptada y promulgada por el Instituto de Derecho Americano, sección 268 (inciso 2), 274 y 275; *Southern Surety Co. v. MacMillan Co.*, 58 Fed. (2d) 541, 549; *Teton Auto Co. v. Northwestern Pure Bred Sow Co.*, 49 Pac. (2d) 643; y casos citados; *In-*

*vestors Utility Corp.* v. *Challacombe,* 39 S. W. (2d) 175, 179; y *Zambeth* v. *Commodores Land Co.,* 136 So. 644.

Nuestra conclusión es que el pacto de endosar en blanco y entregar los certificados de acciones y la obligación de pagar intereses y contribuciones y de tener el edificio Tobacco Palace asegurado, así como la obligación de pagar el saldo de $10,000, no eran obligaciones mutuas dentro del significado del párrafo final del artículo 1053, supra.

█ Hasta aquí hemos asumido, para los fines de la argumentación, que tanto el pagaré como la hipoteca estaban sujetos a todos los términos y condiciones del contrato anterior y que los tres contratos eran sólo uno e inseparables. Conforme indicamos al principio esta acción fué iniciada tomando como base el pagaré y la hipoteca, y no el contrato anterior. Si estamos en lo cierto en la conclusión a que hemos llegado, otras cuestiones suscitadas por el apelante en su alegato resultan académicas. En su consecuencia, nos referiremos ligeramente tan sólo a los primeros cuatro de los nueve errores señalados por el apelante. Estos leen así:

*"Primer error:* La corte erró al desestimar la demanda porque el demandante había faltado al cumplimiento de una de las condiciones contenidas en el convenio del 3 de marzo, 1931, que no era objeto de la demanda, ya que ésta se fundaba en un contrato de hipoteca otorgado entre personas distintas, el 16 de marzo, 1931.

*"Segundo error:* La corte erró al exonerar a los demandados del pago de la obligación fundándose en que el demandante Manuel Madera y el dueño anterior del pagaré en litigio, José Madera, dejaran de entregar al demandado, Herminio Madera, endosadas en blanco, las acciones que hubieran podido tener el 3 de marzo, 1931, en la corporación Alonso Riera & Co., Inc., cuando dicha obligación surgía de un convenio mutuamente acordado, separada e independientemente entre dichos José y Manuel Madera con Herminio Madera exclusivamente, sin que dicha obligación tuviera relación alguna con la causa o consideración en cuya virtud se otorgó el pagaré objeto de la demanda.

*"Tercer error:* La corte erró al considerar como un solo contrato el convenio del 3 de marzo, 1931, y el contrato de hipoteca otorgado, el 16 de marzo, 1931.

"*Cuarto error:* La corte erró al exonerar a las demandadas Herminio Madera, Inc., y Tetuán Tobacco Leaf, Inc., de toda responsabilidad, fundándose en que el demandante y José Madera, dejaron de entregar al demandado Herminio Madera, endosadas en blanco, las acciones que ellos hubieran tenido en la corporación Alonso Riera & Co., Inc., de acuerdo con el convenio del 3 de marzo, 1931, no siendo ésta una obligación mutua y correlativa entre ellas y éstos."

El alegato de los apelados no discute estas cuestiones separadamente ni lo haremos nosotros.

El pagaré era solidario. Era pagadero a José Madera o a su orden. Hasta ahí era una promesa incondicional de pago y es de presumirse que se tuvo la intención de que fuera un documento negociable. Empero contenía dos cláusulas que leen en parte así:

" . . . Este pagaré lo otorgamos por valor recibido, y en consideración además a las estipulaciones de un convenio suscrito por nosotros y otras personas, el tres de marzo, mil novecientos treintiuno . . .

"Este pagaré está garantizado con una hipoteca constituída por la aquí otorgante Tetuán Tobacco Leaf, Incorporated, sobre la propiedad conocida bajo el nombre de Tobacco Palace Building . . . y este pagaré lo suscribimos y entregamos, sujeto además a todas las condiciones estipuladas en la referida escritura de hipoteca."

Si los otorgantes del pagaré hubieran tenido la intención de recargarlo con cualesquiera condiciones contenidas en el contrato anterior, la forma más simple y natural de efectuar este resultado hubiese sido agregar a la cláusula relativa a la causa (*consideration*) las palabras "y sujeto a los términos y condiciones de ese contrato"; o quizá aun mejor pudieron haber dicho "sujeto a los términos y condiciones de ese contrato, copia del cual se acompaña." Cuando los otorgantes del pagaré desearon que el mismo estuviese sujeto a todas las condiciones de la hipoteca, no tuvieron dificultad alguna en hacer constar su deseo de manera enteramente clara. El contraste existente entre la fraseología de las dos cláusulas indica que la elección de palabras fué deliberada y que los redactores del pagaré entendían la diferencia que había entre una mera referencia describiendo

la causa y una modificación de la promesa de pago, al hacer que el pago dependiera del cumplimiento de las obligaciones contenidas en otro contrato. La primera de las dos cláusulas no hacía que el pagaré estuviese sujeto a los términos y condiciones del contrato anterior. Véanse la sección 4 de la Ley de Instrumentos Negociables de Puerto Rico, de 1930 (artículo 356 del Código de Comercio, edición de 1932); 3 R. C. L. 883, sección 69; Id. 912, sección 102; Id. 918, sección 112; 33 A. L. R. 1174; 37 A. L. R. 655; 14 A. L. R. 1126; 61 A. L. R. 815; *Voges* v. *Ward*, (Flo.) 123 So. 785; *Ferring* v. *Berwey*, 229 N. W. 46; *Arrington* v. *Mercantile Protective Bureau*, 24 S. W. (2d) 383; *Shawano Finance Corporation* v. *Julius*, 254 N. W. 355; *People's Bank* v. *Porter*, 208 P. 200; *King Cattle* v. *Joseph*, 198 N. W. '798; *Powell, etc.* v. *Greenleaf (Vermont)* 162 Atl. 377; *Pflueger* v. *Broadway Trust Co.*, 351 Ill. 170, 184 N. E. 318; *Sturgis National Bank* v. *Harris Trust, etc.*, 184 N. E. 589; *Gordon* v. *Colonial Trust Co.*, 167 Atl. 773; *First National Bank of Hoquiam* v. *De Witt (Tenn.)*, 81 S. W. (2d) 396, 398; *Hawley* v. *Bingham*, 6 Oregon 76; *Markey* v. *Corey*, 66 N. W. 493; *Mountjoy Parts Co.* v. *San Antonio National Bank*, 12 S. W. (2d) 609; *Taylor* v. *Curry* (Mass.), 12 Am. Rep. 661; *Dole* v. *Considene*, 195 Ill. App. 311; *National Bank of Newbury* v. *Wentworth*, 218 Mass. 30, 105 N. E. 626; *Culbreath* v. *Guiterman*, 115 So. 303; *Bank of Sherman* v. *Apperson*, 4 Fed. 25; *National Bank* v. *Badham* (S. C.), 68 S. E. 536, 547; *Strand Amusement Co.* v. *Fox*, 87 So. 332; *Tyler* v. *Whitney Central Trust & Savings Bank* (La.), 102 So. 325; y *Snelling State Bank* v. *Clasen* (Minn.), 157 N. W. 643.

En la cláusula quinta, según hemos demostrado, Herminio Madera actuaba "a nombre propio y en la capacidad en que comparecía en el contrato." Las entidades representadas por él lo eran Herminio Madera & Hno., Alonso Riera & Co., Inc., Tetuán Tobacco Leaf, Inc., y Herminio Madera, Inc. Estas fueron las partes que, en unión de Herminio

Madera, asumieron las obligaciones enumeradas en la cláusula quinta. Si estas obligaciones dependían del endoso en blanco y entrega de las acciones a que se hace referencia en el párrafo final de la cláusula octava, uno tendría naturalmente que esperar que Herminio Madera compareciera no individualmente como única persona a cuyo favor existía la obligación, sino "a nombre propio y en la capacidad con que comparece en este contrato," al igual que en la cláusula quinta. El hecho de que Herminio Madera compareciera por sí como contratante y no "a nombre propio y en la capacidad en que comparece en este contrato" según aparece en otra parte del mismo, puede ser o no la explicación lógica de dejar la Tetuán Tobacco Leaf, Inc., como deudora hipotecaria, de hacer que la hipoteca estuviese sujeta al endoso y entrega de los certificados de acciones a Herminio Madera. De todos modos, la hipoteca al menos por sus términos, no se hacía depender de tal endoso y entrega. Hasta este punto, tomando el pagaré y la hipoteca conjuntamente como documentos contemporáneos relativos al mismo asunto, muy bien podría argüirse que el deudor hipotecario y los otorgantes del pagaré (con la posible excepción de Herminio Madera) o no consideraron en absoluto el convenio relativo al endoso y entrega de las acciones, o de lo contrario lo interpretaron como un pacto independiente entre los obligados y Herminio Madera.

Las partes contratantes aparentemente tuvieron por miras que la hipoteca sobre el edificio Tobacco Palace al ser otorgada estaría "sujeta a los términos de este contrato". Esta estipulación de las partes contratantes de que la hipoteca fuera así otorgada, no era de por sí ejecutoria. No tenía el efecto de hacer que la hipoteca al ser otorgada estuviera sujeta a los términos del contrato si la hipoteca por otra parte no estaba sujeta al mismo. Era a lo sumo una promesa implícita de parte de Herminio Madera de que la hipoteca sería otorgada en esa forma. El endoso y entrega de las acciones, si el pacto ha de ser interpretado literal-

mente, estaba condicionado en el otorgamiento e inscripción de una hipoteca que estaba sujeta a tal endoso y entrega. Admitamos que tal endoso y entrega hubieran sido una condición precedente a la ejecución de una hipoteca otorgada en la forma provista por el contrato. Subsiste el hecho de que la hipoteca tal cual fué otorgada no estaba sujeta a los términos del contrato. Éste, aun entre las partes contratantes, no hacía que la obligación contraída con tal hipoteca dependiera del endoso y entrega de las acciones.

Los apelados en su alegato hacen mención del hecho de que un número de las cláusulas contenidas en el contrato anterior fueron necesariamente incluídas en la escritura de hipoteca, pero dejan de demostrar que esto, sin más, hacía que la hipoteca estuviera sujeta a otras disposiciones del contrato anterior que no habían sido igualmente incluídas. Posiblemente hubiera podido sacarse algo más a este punto de haberse discutido adecuadamente en el alegato. Toda vez que los apelados al igual que la corte inferior descansaron principalmente en la primera de las dos cláusulas contenidas en el pagaré, no es necesario que ahora especulemos respecto a cuál pudo haber sido el efecto de incluir ciertas disposiciones del contrato anterior en la hipoteca y el excluir otros del mismo, si en el contrato anterior el endoso y la entrega de las acciones se hubieran hecho una condición precedente al cumplimiento de otras obligaciones, como por ejemplo el pago de los $10,000, más intereses y contribuciones y la obtención de una póliza de seguro en la forma dispuesta en el contrato.

La corte de distrito se basó en las siguientes autoridades: *Riera* v. *Macías Vda. de Riera*, 42 D.P.R. 579; *Sucesión Iglesias* v. *Bolívar*, 11 D.P.R. 441; *Portela* v. *Porto Rican American Tobacco Co.*, 4 D.P.R. 30 (segunda edición) y *Palacios* v. *Arzuaga*, 37 D.P.R. 289. Un examen de los hechos de dichos casos bastará para distinguirlos del presente.

*La sentencia apelada debe ser revocada, y en su lugar esta corte dictará otra en favor del demandante.*