# 2001 DTA 111

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN
PANEL III**

JAIME TORRES GAZTAMBIDE Y CARMEN L. VICENTY ESCALONA Y LA SOCIEDAD
LEGAL DE GANANCIALES POR ELLOS COMPUESTA
Demandantes-Peticionarios

v.

EDGARDO MORALES RAMIREZ, GLORIA SANTIAGO RIVERA Y SAN PEDRO ESTATES, SE.
Demandados-Recurridos

Núm. KLCE-00-01306

San Juan, Puerto Rico, a 29 de enero de 2001

Panel integrado por su Presidente, el Juez Negrón Soto,
y los Jueces Segarra Olivero y Negroni Cintrón

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Los peticionarios recurren de una denegatoria a su solicitud de sentencia sumaria, la que fundamentaron en que poseían un pagaré pagadero a la presentación suscrito por el Sr. Edgar F. Morales Ramírez, en lo sucesivo Morales, y que no existían controversias de hechos, ni de derecho, que impidieran dictar sentencia parcial sobre la deuda reflejada en el mismo. Morales y los otros demandados, los cuales en conjunto denominamos como recurridos, se opusieron, posición que el Foro de instancia adoptó.

Habiendo comparecido los recurridos, denegamos la expedición del auto. Examinemos los hechos pertinentes.

### I

El pagaré en controversia por un valor de $750,000 y pagadero a su presentación, que fue firmado y jurado por Morales el 29 de noviembre de 1994, dice así:

*"POR VALOR recibido, el suscribiente se compromete a pagar al portador y a la presentación de este instrumento la suma total de $750,000, cantidad ésta sobre la cual no se devengarán intereses.*

*Me obligo a pagar las costas y honorarios de abogado de que se valga el tenedor de este pagaré en caso de cobro extrajudicial o judicial, fijando con tal fin como suma líquida la cantidad $35,000.00.*

*Renuncio a la presentación, protesto y aviso de no haber sido honrado este pagaré y, asimismo, renuncio a las leyes de prescripción que puedan favorecerme."*

Morales aceptó haber suscrito ese pagaré y haberlo entregado a los peticionarios, pero negó que el mismo podía cobrarse a su presentación. Al oponerse a la sentencia sumaria, sostuvo en declaración jurada del 14 de julio de 2000 lo siguiente:

*"1. Que soy socio y co-administrador de la Sociedad Especial San Pedro Estates I, S.E., con una participación de cuarenta y nueve porciento (49%).*

*2. Que estoy en total conformidad con los hechos presentados por mis abogados en el escrito que antecede, en particular con relación al contrato entre los demandantes y los codemandados, y en específico, la parte donde se afirma que se acordó con el demandante que el codemandado únicamente respondería por la mitad del préstamo, representada por el pagaré, si el proyecto de la Sociedad no producía lo suficiente, es decir, si producía perdidas (sic).*

*3. Como resultado de lo anterior, los codemandados no adeudan suma alguna a los demandantes que pueda estar vencida hasta que se liquide la totalidad del proyecto y los activos de la Sociedad."*

El propósito de dicho pagaré surgió con la creación de la Sociedad Especial San Pedro Estates I, S.E., en la cual los demandantes-peticionarios tenían una participación de 49%, Morales otro 49% y la codemandada Gloria Santiago Rivera un 2%. Esa Sociedad, creada el 23 de agosto de 1994, adquirió un terreno para desarrollar 13 solares con unidades residenciales en el Barrio Cañas de Caguas. Para poder adquirir estas propiedades, la Sociedad obtuvo un préstamo por $1,500,000.00 en el Banco Santander, el cual garantizaron los demandantes con ciertos valores que poseían. Para garantizar su parte, Morales suscribió el pagaré en controversia, *ante*, que correspondía a la mitad de dicho préstamo. Posteriormente, el Banco Santander exigió el pago del mismo y sus intereses, el cual fue liquidado en su totalidad por los demandantes sin que Morales aportara nada, aun cuando fue requerido para que lo hiciera.

Ante las dificultades que han tenido en lograr que dicha Sociedad tenga éxito en los negocios, los demandantes, además de reclamar el pago de la obligación que surge de dicho pagaré, incluyeron otras causas de acción solicitando el pago de otros intereses y que se nombrara un síndico, por razón de que Morales había estado administrando dicha Sociedad. De otro lado, los recurridos, luego de contestar la demanda y negar la procedencia de la exigibilidad de la suma consignada en dicho pagaré, negaron lo relativo a los otros intereses reclamados, sostuvieron que la Sociedad había sido coadministrada por las partes e indicaron que no se oponían a que se nombrara un profesional para que la administrara. Además, presentaron una reconvención reclamando daños y perjuicios por las acciones y omisiones de los demandantes, las que alegan fueron las causantes de que la Sociedad no hubiera sido exitosa.

Luego de que el Tribunal de Primera Instancia considerara y analizara los escritos de las partes con la prueba documental presentada, emitió el dictamen recurrido denegando la solicitud de los peticionarios. Es de notar que éstos, comó demandantes, no rebatieron con declaración jurada, ni ningún otro documento, excepto lo indicado en su alegato, el alegado acuerdo entre las partes de que sólo Morales respondería de la deuda del pagaré en determinadas circunstancias; o sea, de que la fecha del vencimiento del pagaré había sido alterada. El Foro de instancia, en lo pertinente, expresó en su Resolución lo siguiente:

*"En su moción de sentencia sumaria parcial, los demandantes solicitan que el Tribunal determine ciertos hechos incontrovertidos referentes al Anejo Núm. 1 de la demanda, que lo constituye una copia de un pagaré suscrito por el codemandado Morales por la cantidad principal de $750,000. Intiman que el Tribunal puede determinar, además de los hechos anteriores, los siguientes: que el pagará fue hecho al portador; que es pagadero a la presentación; que obliga al demandado Morales a pagar $35,000 en costas y honorarios de abogado en caso de reclamación judicial; que los demandantes le han requerido el pago del pagaré; que el demandado Morales se ha negado; y que la deuda está vencida, es líquida y exigible. Por último, argumentan que el derecho aplicable fundamenta su razón de pedir, por lo que procede la sentencia sumaria solicitada.*

*Luego de orden al efecto, el codemandado Morales se opuso a la moción de sentencia sumaria interlocutoria por escrito presentado el 19 de julio de 2000. En el mismo sostiene, bajo juramento, que en su contestación a la demanda ha negado la procedencia del pago del mencionado pagaré y ha aducido entre sus (sic) Santander estaba sujeto a que el proyecto de la sociedad produjera dinero suficiente. Además, asevera*

*que le entregó el pagaré por $750,000 al demandante Torres Gaztambide para que éste tuviera evidencia del mismo en caso de muerte de Morales.*

*El análisis de los dos escritos de las partes, nos lleva a concluir, sin la mínima duda, que existe controversia sobre hechos medulares y esenciales que derrota (sic) la moción de sentencia sumaria interlocutoria solicitada. En particular, existe controversia en torno a si el pago del pagaré por el codemandado Morales estaba o no condicionado a que hubiese ganancia en el proyecto de la sociedad especial. Finalmente, debe determinarse, además, si el pagaré está vencido y es exigible y, por ende, si el demandado Morales es responsable por el pago."*

Imputan los peticionarios al Tribunal recurrido que erró al:

*"...tomar en cuenta prueba extrínseca al pagaré suscrito por Morales Ramírez, pues de tal manera, destruyó la "incondicionalidad" característica de pagarés como el aquí envuelto.*

*...no determinar que la deuda del pagaré era líquida (sic) vencida y exigible.*

*...concluir que una reclamación sobre una deuda líquida (sic) vencida y exigible, no es susceptible de resolución mediante el mecanismo de sentencia sumaria."*

Debemos, en primer lugar, examinar brevemente las normas de derecho relacionadas con los pagarés a la presentación o al portador para, entonces, discutir los tres errores en conjunto.

## II

Sostienen los peticionarios que aplica la Ley 208, del 17 de agosto de 1995, 19 L.P.R.A. secs. 501 *et. seq.*, conocida por Ley de Instrumentos Negociables y Transacciones Bancarias. Como se indica, en lo pertinente, su exposición de motivos:

*"La característica principal de esta legislación es su reconocimiento de la celeridad del tráfico moderno. En el ambiente electrónico de fin de Siglo XX, la expedición, presentación, confirmación, cobro, pago y devolución de los millones de efectos en circulación exigen términos específicos para la fijación de las responsabilidades conexas con cada paso de su manejo y negociación. Eso es lo que persigue y provee el UCC.*

*Puerto Rico, con sesenta y cinco (65) años de atraso en esos mismos menesteres, representa un anacronismo en nuestro empeño de marchar a la vanguardia. Esta Ley persigue cerrar la brecha existente y colocarnos en paridad cambiaria al entrar al Siglo XXI.*

*Aunque está basada en los Artículos 1, 3, 4 y 4A del UCC (texto oficial 1990), esta Ley no es una mera traducción de dichas fuentes. Esta Ley se divide en cinco capítulos. El primero es equivalente del Artículo 1 del UCC adaptado a nuestro derecho y provee las reglas de interpretación y aplicabilidad. El segundo capítulo cubre el tráfico de los instrumentos negociables, las órdenes y promesas de pago que son el mayor componente del cambio económico. Este capítulo es equivalente al Artículo 3 del UCC. El tercer capítulo de la Ley es sobre Depósitos y Cobros Bancarios y regula no sólo el derecho entre bancos, sino las relaciones de éstos con sus clientes. El capítulo tercero es equivalente al Artículo 4 del UCC. El cuarto capítulo de la Ley está dedicado exclusivamente al tráfico de las transferencias cablegráficas (wire) y electrónicas de fondos entre bancos y sus clientes comerciales e industriales y representa la más importante legislación para coordinar el tráfico entre bancos locales y los de los Estados Unidos. Este cuarto capítulo es equivalente al Artículo 4 del UCC. Finalmente, el quinto capítulo provee las reglas transitorias y deroga leyes inconsistentes con esta Ley.*

*Con la adopción de esta Ley, Puerto Rico se incorpora al Siglo XXI con una legislación cambiaria ágil que está a la par con el mercado mundial y que entronca particularmente con la legislación uniforme de los Estados Unidos."*

Específicamente, sostienen que el pagaré a la presentación es un instrumento negociable que puede presentarse el pago en cualquier momento y que no estaba sujeto a ninguna condición, ni promesa u orden impuesta en otro escrito o acuerdo verbal. ■ Entre otras, nos cita las siguientes disposiciones de ley:

*"La Sección 2-104, ibid, inciso (a), 19 L.P.R.A. sec. 504, lo siguiente:*

*(a) Salvo según se dispone en los incisos (c) y (d) de esta sección, "instrumento negociable" significa una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:*

*(1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;*

*(2) es pagadero a la presentación o en una fecha específica; y*

*(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener: (A) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (B) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (C) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.*

*La Sección 2-106, inciso (a), 19 L.P.R.A., sec.506, estatuye que:*

*(a) Salvo según se dispone en esta sección, para fines de la sec. 504(a) de este título, una promesa u orden es incondicional a menos que establezca: (1) una condición expresa de pago, (2) que la promesa u orden este sujeta a, o regida por, otro escrito, o (3) que se establezcan en otro escrito los derechos u obligaciones respecto a la promesa u orden. Una referencia a otro escrito, no convierte a la promesa u orden en una condicional.*

*La Sección 2-109, ibid, 19 L.P.R.A. sec. 509, de esta Ley dispone lo siguiente:*

*(a) Una promesa u orden es pagadera al portador si la misma:*

*(1) Especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago;*

*(2) no designa un tomador;*

*(3) especifica que es pagadera a, o a la orden de, efectivo (cash) o de otra forma indica que no es pagadera a una persona identificada.*

*(b) Una promesa u orden que no es pagadera al portador, es pagadera a la orden si la misma es pagadera: (A) a la orden de una persona identificada, o (B) a una persona identificada o a su orden. Una promesa u orden que es pagadera a la orden, es pagadera a la persona identificada.*

*(c) Un instrumento pagadero al portador puede convertirse en pagadero a una persona identificada si el mismo recibe un endoso especial de acuerdo con lo dispuesto en la sec. 555(a) de este título. Un instrumento pagadero a una persona identificada puede convertirse en pagadero al portador si el mismo es endosado en blanco, de acuerdo con lo dispuesto en la sec. 555(b) de este título."*

De todo ello se desprende que para que un instrumento sea negociable tiene que tener una certeza en cuanto al momento que debe ser presentado al cobro. Cuando no existe esa certeza queda destruida la negociabilidad,

pero ello no afecta al contrato que tuvieran las partes y que dieron lugar a ese instrumento. Véase, *Gross v. Von Doleke*, 20 N.W.2d 838, (1945); *Simpson v. Baber*, 220, p. 235 (1923).

Es sabido que la Ley de Instrumentos Negociables y Transacciones Bancarias es aplicable en aquellos casos donde se ha negociado la promesa u orden de pago; en este caso, el pagaré a la presentación. En consecuencia, como en el caso ante nos el pagaré no fue negociado, ya que éste está en manos de la misma persona que contrató con Morales, aplica el Código Civil.

Del contrato efectuado por esas partes en el caso de marras para crear la Sociedad, ni de ningún otro acuerdo escrito, surge que hubiera habido una alteración o modificación del mismo. ■ Ante lo alegado bajo juramento por Morales, alegan los peticionarios que la Regla 69 (B), 32 L.P.R.A. Ap. IV, no permite la presentación de prueba para poner en controversia que el pagaré no es pagadero a su presentación. Esta Regla 69 (B), dispone lo siguiente:

*"(B) Cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado, por lo que no cabrá entre los convinientes o sus sucesores en interés, evidencia extrínseca al contenido del mismo excepto en los siguientes casos:*

*(1) Cuando una equivocación o imperfección en el convenio sea alegada en el litigio;*

*(2) Cuando la validez del convenio constituye el hecho controvertido.*

*Esta Regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare como lo son la situación del objeto a que se contrayere, o la de las partes, o para probar ilegalidad o fraude. Enmendada en Julio 20, 1979, Núm. 180, p. 517, art. 1, ef. Octubre 1, 1979."*

Al interpretar esta disposición de ley, nuestro Tribunal Supremo, en *Hernández Torres y otros v. Padilla Morales, etc.*, **97 J.T.S. 49**, pág. 894, resolvió lo siguiente:

*"La Regla 69 (B) de Evidencia establece que, ante un convenio en el que se han incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, no se admitirá evidencia extrínseca al contenido del mismo, a menos que se alegue una equivocación o imperfección o cuando la validez del convenio esté en controversia. La regla no tiene el efecto de excluir otra evidencia de circunstancias bajo las cuales fue hecho el contrato o con las cuales se relacione. Tampoco excluye prueba tendente a establecer ilegalidad o fraude en el convenio.*

*Reiteramos. No estamos ante una mera cuestión evidenciaria, sino ante una importante norma de derecho sustantivo, como parte de la teoría general de las obligaciones y contratos.* ■ *Marina Ind., Inc. v. Brown Boveri Corp., __ D.P.R. __ (1983); Chaves v. Cooperativa de Crédito, 103 D.P.R. 892, 894 (1975).*

*Por otro lado, '[la] aplicación de la regla tiene como premisa que un convenio, oral o escrito, sea integrado; es decir, incluye todos los términos y condiciones que constituyen la verdadera y última intención de la partes. Basta que no se trate de la última intención de las partes para que no sea aplicable la regla'."* Chiesa, *ob. cit.*, pág. 474.

A tenor con esa norma, en ese caso se determinó que la prueba ofrecida por los demandados, relativa a que los términos del contrato, fueron alterados; era admisible porque establecía la verdadera intención de esa parte. Más adelante, *ibid*, se indicó que *"[d]el mismo modo que el Código Civil permite que se modifiquen convenios a través de acuerdos (orales o escritos) posteriores, la regla de evidencia extrínseca no es obstáculo para la presentación de prueba que acredite tales modificaciones, o en igual sentido las desacredite. Chiesa, ob. cit., pág. 475".*

En consecuencia, correspondía al Tribunal de Primera Instancia en una vista evidenciaria resolver la procedencia de esa prueba testifical a la luz de la jurisprudencia antes citada. Así, el Foro recurrido actuó correctamente al considerar la declaración jurada presentada por Morales para concluir que existía controversias de hechos y derecho que le impedían dictar la sentencia sumaria, ■ conforme a las normas de derecho aplicables.

Es sabido que la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que un tribunal podrá dictar sentencia sumaria si:

*"Las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente...*

*El propósito de una moción de sentencia sumaria es "propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio en su fondo." Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).*

En *Piñero González v. A.A.A.*, **98 J.T.S. 140**, pág. 216, nuestro más Alto Foro resumió las normas relativas a la sentencia sumaria de la manera siguiente:

*"Reiteradamente, hemos expresado que las Reglas 36.1 y 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, permiten a los tribunales dictar una sentencia mediante la cual dispongan total o parcialmente de determinada reclamación sin necesidad de celebrar un juicio en sus méritos. Así, pues, procede dictar sentencia sumariamente cuando no exista una controversia real sustancial respecto a ningún hecho material. Al considerar la moción se sentencia sumaria, se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente. La parte opositora, a su vez, debe presentar documentos y declaraciones juradas que controviertan los presentados por la parte promovente. HMCA (P.R.) v. Contralor, 133 D.P.R. 1945 (1993). ...Si la parte opositora se cruza de brazos, corre el riesgo de que se dicte sentencia en su contra sin la celebración de una vista en su fondo. Mercado Vega v. U.P.R., 128 D.P.R. 273, 281 (1991). Ahora bien, la sentencia sumaria sólo debe dictarse en casos claros, y cualquier duda sobre si un hecho ha sido o no contradicho, debe resolverse en contra de la parte promovente. Rivera Santana v. Superior Packaging, Inc., 132 D.P.R. 115 (1992). Por otro lado, se puede dictar sentencia sumaria a favor de la parte no promovente, si de los documentos presentados en apoyo de la moción surge que no existe controversia en cuanto a los hechos esenciales y, como cuestión de derecho, procede que la misma se dicte a favor de dicha parte." Consejo Tit. C. Parkside v. MGIC Fin. Corp, 128 D.P.R. 538, 549 (1991).*

De otro lado, la Regla 36.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que:

*"Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenida en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria, si procediera."*

### III

Habiéndose determinado que en el caso de marras no aplica la Ley de Instrumentos Negociables y Transacciones Bancarias, y que de conformidad a nuestro Código Civil la Regla 69 (B) de Evidencia, ante, no impide que los recurridos pusieran en controversia que el pagaré no correspondía al acuerdo final e intención de las partes; o sea que el pagaré fuera pagadero a la presentación -lo que hicieron por declaración jurada-, los

peticionarios venían obligados a contestar en forma detallada y específica los hechos pertinentes que se habían puesto en controversia. Al no hacerlo y sólo descansar en lo dispuesto en el pagaré, la única alternativa que tenía el Foro recurrido era denegar la solicitud de sentencia sumaria porque estaba en controversia si la deuda del pagaré era una líquida, vencida y exigible. En consecuencia, las partes están obligadas a dilucidar ello en un juicio plenario. Obviamente, nada impide que aquella parte que entienda que sus reclamaciones corren algún riesgo, acudan al aseguramiento de la sentencia que pueda recaer, según dispuesto en la Regla 56.1 de la de Procedimiento Civil. ▬

## IV

En consideración a lo anteriormente expresado, se deniega la expedición del auto de *certiorari*.

Así lo ordena el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 111

**1.** Sobre la norma de que un pagaré pagadero a la presentación no pierde su valor y eficacia por confusión de derechos ante el endoso del instrumento negociable a su librador cuando éste lo vuelve a poner en circulación, véase, *Srio. de Hacienda v. Tribunal Superior,* 95 D.P.R. 436 (1967); *F.S.E. v. Peña Plaza,* 100 D.P.R. 637 (1972); *Calo Rivera v. Reyes,* 115 D.P.R. 123 (1984).

**2.** En *Madera v. Madera,* 49 D.P.R. 165 (1935), nuestro Tribunal Supremo tuvo ante su consideración un pagaré expedido al portador que a su vez estaba efectado por otros contratos entre ésas y otras partes. Este caso fue confirmado en 88 F. 2d. 855 (1ro. Cir. 1937). Citado con aprobación en: *In re: Las Colinas, Inc.* 294 F. Supp. 582, 595 (D.C.P.R. 1968); *Mitsui & Co. v. Puerto Rico Water Resources Auth.,* 528 F. Supp. 768, 775 (D.C.P.R. 1981); *Chemetron Corp. v. Cervantes,* 92 F.R. D. 26, 30 (D.C.P.R. 1981). Allí se resolvió que frente a la exigibilidad del pago de un pagaré hipotecario, ya que éste es independiente de cualquier otro documento, inclusive de cualquier otro contrato que dio lugar a su otorgamiento, no son oponibles defensas que tuviera el deudor dimanantes de las obligaciones contraídas en otros documentos. Ante ello, no era de importancia el que el deudor demandado considerara que tenía unas reclamaciones que ejercitar por vía de reconvención, por el alegado incumplimiento del acreedor demandante, de una obligación bajo el contrato principal u otros acuerdos, ya que la obligación de pago del deudor que proviene del pagaré y la hipoteca es de naturaleza incondicional y unilateral. Concluyó que esta parte no podía recurrir a la retención de los pagos para asegurar la efectividad de una posible sentencia a su favor sin cumplir con los requerimientos de la Regla 56 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.

**3.** En su nota al calce número 10 dice:

*"Como tal, '[u]n tribunal apelativo puede considerar aspectos de 'parole evidence' [prueba extrínseca] que no fueron traídos a la consideración del tribunal de instancia -o fueron mal presentados-, porque no se trata de admisión o exclusión errónea de evidencia, materia gobernada por las Reglas 4 y 5 de evidencia. Los tribunales de instancias o apelativos pueden considerar motu proprio el derecho sustantivo, independientemente de los planteamientos (o ausencia de ellos) de las partes."* Chiesa, *Práctica Procesal Puertorriqueña, Vol. I, Evidencia,* pág. 477.

**4.** Para la admisión de evidencia testifical cuando se está considerando un contrato mercantil, véase el Artículo 82 del Código de Comercio, 10 D.P.R. sec. 1302, y *Vilá & Hnos, Inc. v. Owens Ill de P.R.,* 117 D.P.R. 825 (1986).

**5.** Véase, Regla 56.3, *ibid,* la cual indica que puede considerarse un remedio provisional sin la presentación de fianza en los casos allí enumerados, los que incluye aquéllos en los que aparece en un documento público o privado que la obligación es legalmente exigible.